UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDUARDO MORENO PEREZ,

    Plaintiff,

v.                                                                                                          Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,               Case No. 1:19-cv-586

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Secretary of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Secretary of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Dept. of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## Procedural Posture

Plaintiff filed an application for SSI on July 18, 2016, alleging that he became disabled on June 1, 2010. (PageID.205, 222.) Plaintiff was age 50 at the time he filed his application. (PageID.110.) Plaintiff had a high school education and had previous employment as a

production assembler. (PageID.66, 104.) After Plaintiff's application was denied (PageID.125), he requested a hearing before an Administrative Law Judge (ALJ) (PageID.146).

ALJ Colleen M. Mamelka conducted a hearing on June 5, 2018, and received testimony from Plaintiff and Zachary A. Matthews, an impartial vocational expert. (PageID.60–88.) At the hearing, Plaintiff amended his alleged onset date to June 7, 2016. (PageID.222.) On September 18, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled from the date he filed his application through the date of the decision. (PageID.45–55.) Plaintiff filed a request for review by the Appeals Council. (PageID.201.) The Appeals Council denied Plaintiff's request for review on May 22, 2019. (PageID.31–35.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on July 19, 2019.

## Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since his application date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease with herniation and radiculopathy; (2) depression; and (3) anxiety. (PageID.48.) The ALJ determined that Plaintiff's migraine headaches, hypertension, and obstructive sleep apnea were non-severe impairments because they were controlled with medication and/or had no more than minimal impact on Plaintiff's ability to work. (PageID.49.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of

---

capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.31–32.) The ALJ considered Listings 1.04 (disorders of the spine), 12.04 (Affective Disorders) and 12.06 (Anxiety-related Disorders). (PageID.49–51.) Regarding Listing 1.04, the ALJ found that the medical evidence did not meet the requirements under any of the options for meeting the listing. (PageID.49.) As for Listings 12.04 and 12.06, the ALJ considered the four broad areas of mental functioning set out in the "paragraph B" criteria, 20 C.F.R. Pt. 404, Subpt. P, App 1. The ALJ found that Plaintiff had mild limitations in the areas of understanding, remembering or applying information and adapting or managing himself and moderate limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace. (PageID.30–31.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform light work as defined in 20 C.F.R. § 416.967(a), except that he: (1) could only occasionally climb ramps and stairs, balance, kneel, crouch, crawl, and reach overhead with the left upper extremity; (2) could never climb ladders, ropes, or scaffolds; (3) could not work around unprotected heights or moving machinery; and (4) was limited to simple, routine, repetitive tasks with occasional interaction with the general public. (PageID.51.)

At step four, the ALJ determined that Plaintiff was not disabled during the relevant period because he could perform his past relevant work as a Production Assembler. (PageID.53.) At step five, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy. (PageID.54.)

## Discussion

Plaintiff raises four issues in his appeal: (1) whether the ALJ erred in determining that Plaintiff's severe impairments did not meet or equal the criteria of Listing 1.04(A); (2) whether the ALJ misstated the record and failed to consider all of the evidence of record in determining Plaintiff's RFC; (3) whether the ALJ properly applied the "treating source" rule and "good

5

reasons" requirement; and (4) whether the ALJ failed to consider the effects of Plaintiff's obesity on his impairments and ability to work as required by SSR 02-1p.

**I.      Listing 1.04(A)**

Plaintiff argues that the ALJ committed reversible error in failing to find that his impairments met or equaled the requirements of Listing 1.04(A). (ECF No. 9 at PageID.544–45.) At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. § 404.1520(a). An impairment that meets only some of the requirements of a listing does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).

> Listing 1.04(A) requires the following:
>
> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root ... or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, App. 1 § 1.04(A). Plaintiff argues that the ALJ should have determined that he meets the requirements of Listing 1.04(A) because the medical record contains evidence of degenerative disc disease throughout the lumbar spine with nerve root

compression. Plaintiff further argues that he has pointed to evidence in the record that satisfies all of the requirements of the listing. (ECF No. 9 at PageID.544.)

To carry his burden, Plaintiff must show that he "meet[s] the listing criteria for a period of twelve months." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 499 (6th Cir. 2006); *see* 20 C.F.R. § 404.1525(c)(3). Plaintiff cites a collection of evidence from February 2014 through June 2018 to show that he meets the requirements of Listing 1.04(A). (ECF No. 9 at PageID.544 (citing PageID.348, 418, 427–30, 438, 452, 517).) This evidence does not demonstrate that his impairments met or were medically equal in severity to the listing for a period of twelve continuous months. For example, in December 2016, consultative examiner Laureen McGuire, M.D., found that Plaintiff had intact sensation, 5/5 muscle strength throughout except for the lower right extremity of 4/5, and no muscle atrophy. (PageID.417.) Although straight leg raising was positive on the right side in the supine position, Dr. McGuire did not indicate positive seated straight leg raising—a requirement of Listing 1.04(A). *See Sistrunk v. Comm'r of Soc. Sec.*, No. 1:17-cv-1771, 2018 WL 3126585, at *5 (N.D. Ohio June 26, 2018) (noting that to satisfy Listing 1.04(A), a claimant is required to demonstrate, among other things, "positive straight leg raise test, in both the sitting and supine positions"). Similarly, in April 2017, Ramnath Suresh, M.B.B.S., a neurosurgeon, reported that his motor examination showed no weakness, atrophy, clonus, or fasciculations and sensory findings were normal. (PageID.452.) While straight leg raising in the supine position was positive on the right, "[s]itting up straight leg raising was negative on both sides at 90 degrees." (*Id.*)

Accordingly, this argument lacks merit because Plaintiff fails to show that his degenerative disc disease meets all of the requirements of Listing 1.04(A) for a continuous twelve-month period.

## II.   Consideration of Evidence of Record

Plaintiff next argues that the ALJ misstated the record and failed to consider the full effects of his pain in determining Plaintiff's RFC. RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. § 416.945. A claimant's RFC is the most that the claimant can do after considering the effects of all impairments on the ability to perform work-related tasks. 20 C.F.R. § 416.945(a). "The ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). In addition, SSR 16-3p guides an ALJ in evaluating a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability. As explained in *Palmer v. Commissioner of Social Security*, No. 1:17-cv-577, 2018 WL 4346819 (W.D. Mich. Aug. 9, 2018), *report and recommendation adopted*, 2018 WL 4334623 (W.D. Mich. Sept. 22, 2018):

> The longstanding two-part analysis for evaluating symptoms applies. 20 C.F.R. § 404.1529(a). "An ALJ must first determine 'whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms.' If such an impairment exists, the ALJ 'must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.'" *Morrison v. Commissioner*, 2017 WL 4278378, at *4 (quoting *Rogers v. Commissioner*, 486 F.3d 234, 247 (6th Cir. 2007)). Relevant factors to be considered in evaluating symptoms are listed in 20 C.F.R. § 404.1529(c)(3). "It is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Commissioner*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases); *see also Carsten v. Commissioner*, No. 15-14379, 2017 WL 957455, at *4 (E.D. Mich. Feb. 23, 2017).

Id. at *6.

Consistent with prior ruling SSR 96-7p, *see Rogers*, 486 F.3d at 248, SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the

8

individual's symptoms." 2017 WL 5180304, at *10. Moreover, the same rules of review apply to an ALJ's assessment of a claimant's symptoms under SSR 16-3p that applied to a credibility assessment under SSR 96-7p. That is, the ALJ's determination must be afforded deference so long as it is supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* The Sixth Circuit has said that an ALJ's "credibility findings may not be disturbed absent compelling reason," and in general, "are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal quotation marks omitted).

Plaintiff cites two specific errors in the ALJ's RFC assessment. First, he contends that the ALJ erred in stating that no physician had recommended back surgery because Dr. Eltahawy recommended an anterior lumbar interbody fusion in the future. (PageID.53, 430.) This argument shows no error, because it mischaracterizes Dr. Eltahawy's recommendation. He simply said that the surgery "*may be warranted* in the future," not that Plaintiff should have it. (*Id.* (italics added).) Moreover, Dr. Eltahawy's note is from February 18, 2014—over two years before Plaintiff filed his application and his amended alleged onset date. The ALJ correctly observed that no doctor—whether within or without the relevant time-period—had recommended back surgery.

Second, Plaintiff argues that the ALJ erred in failing to consider the side effects of his medication and erroneously stated that Plaintiff testified that he does not have any side effects from his current medication. (ECF No. 9 at PageID.545.) Although Plaintiff claims that he testified about side effects, his testimony was equivocal. In response to the ALJ's question about

9

side effects of his pain medication, Plaintiff answered that at the beginning he was constipated but now it was "more normal." (PageID.73.) With regard to his medication for depression and anxiety, Plaintiff testified that he got headaches if he "miss[ed] a day or two" when he did not get it refilled in time" (PageID.78), thus implying that he should have no side effects if he is taking his medication. Later in the hearing, in response to a question from his counsel, Plaintiff testified that he needed to take naps because one or two of his medications made him drowsy. (PageID.84.) The ALJ's observations about Plaintiff's testimony were a reasonable summation of that testimony. Moreover, the ALJ's decision not to incorporate additional limitations into her RFC determination based on a lack of side effects was well supported by the medical record. For example, on September 19, 2016, Plaintiff reported to his therapist that he had no side effects with his medications. (PageID.476.) And, in April 2018, Dr. de Vries, Plaintiff's treating psychologist, reported that Plaintiff had not had any serious side effects from his medication. (PageID.424.)

Plaintiff raises no other issues regarding the ALJ's evaluation of his symptoms. Indeed, the ALJ cited several permissible bases for determining that Plaintiff's subjective complaints were not fully consistent with the evidence as a whole, including Plaintiff's daily activities and statements reported in his treatment notes, his limited and conservative treatment (including only physical therapy and back exercises and lack of emergency room visits or hospitalizations for his psychological symptoms), and the consultative examiner's observation that Plaintiff "appeared to somewhat exaggerate his discomfort and inability to do maneuvers" during the examination. (PageID.52–53.) *See* 20 C.F.R. § 416.929(c)(3); *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (concluding that the ALJ properly evaluated the plaintiff's credibility in light of a lack of aggressive treatment, the plaintiff's daily activities and

record inconsistencies); *Ward v. Comm'r of Soc. Sec.*, No. 95-2140, 1995 WL 712763, at *4 (6th Cir. Dec. 4, 1995) (per curiam) (concluding that the ALJ properly relied on doctors' observations that the plaintiff seemed to exaggerate his pain). Plaintiff cites no evidence in the medical record indicating that additional limitations are proper.

Accordingly, the ALJ's RFC determination is supported by substantial evidence.

**III.    Treating Physician Opinions**

Plaintiff argues that the ALJ failed to comply with the treating physician rule and good reasons requirement in weighing the opinions of Plaintiff's mental health providers, psychiatrist Daniel de Vries, M.D., and psychologist Eugene Pernell, Ph.D. In April 2018, Dr. de Vries stated that Plaintiff suffered from severe depressive disorder with low mood, excessive sleep, appetite disturbances, social isolation, and chronic pain and that Plaintiff's prognosis was poor. Dr. de Vries opined that Plaintiff could not sustain a full-time job. (PageID.423–24.) In May 2018, Dr. Pernell stated that Plaintiff suffered from recurrent depression and anxiety, had extreme limitations in activities of daily living and social functioning, and marked difficulties in maintaining concentration, persistence, or pace, and had four or more episodes of decompensation. (PageID.499, 501, 506.) Dr. Pernell wrote that Plaintiff "lacks the ability to manage a job." (PageID.508.) On May 10, 2018, Dr. Pernell submitted a Medical Questionnaire in which he opined that Plaintiff had problems standing and sitting for long periods and functioning in groups. Dr. Pernell stated that Plaintiff "cannot work to support himself given his condition" and that Plaintiff would miss more than four days per month if he attempted to work. (PageID.510–12.) The ALJ assigned little weight to these opinions because:

> These opinions are not consistent with the medical evidence. The claimant sought limited treatment in 2016 and 2017. In March 2018, the claimant returned to treatment. Treatment notes stated that the claimant was stable with fair prognosis. The claimant [sic] treatment from 2018 is from March through May 2018, with conservative treatment only and no hospitalizations. The marked and extreme

> limitations are inconsistent with the objective evidence. In addition, the issue of disability is reserved for the Commissioner.

(PageID.53–54.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any

objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id*. (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

The ALJ declined to give the doctors' marked and extreme limitations controlling weight because they were inconsistent with the medical record as a whole and their own treatment notes. "An inconsistency with treatment notes and other evidence in the medical record are among the reasons that can independently justify an ALJ's decision to give less-than-controlling weight to a treating physician's opinion." *Moses v. Comm'r of Soc. Sec.*, No. 1:19-cv-1960, 2020 WL 3453129, at *10 (N.D. Ohio May 29, 2020), *report and recommendation adopted*, 2020 WL 3447831 (N.D. Ohio June 24, 2020); *see also Goldman v. Comm'r of Soc. Sec.*, No. 1:080cv-664, 2009 WL 3242569, at *9–10 (W.D. Mich. Sept. 30, 2009) (finding the ALJ's decision to give less than controlling weight to the treating source's opinions proper because they were "inconsistent with the objective medical evidence as well as [the doctor's] own treatment notes"). On June 7, 2016, Plaintiff's first visit to Meridian Professional Psychological Consultants, Plaintiff was calm and cooperative. The therapist reported that he

was attentive and had normal concentration and orientation. (PageID.398, 400.) In August 2016, Plaintiff's primary care physician, Ashraf Abdullah, M.D., reported that Plaintiff's depression was controlled with medication and that Plaintiff was "currently stable." (PageID.385.) On September 12, 2016, Dr. de Vries noted that Plaintiff's prognosis was "fair" and assessed his depression "at the mild to moderate level of severity." (PageID.413.) Plaintiff's treatment notes through April 14, 2017—his last treatment date in 2017—and his treatment notes from March through April 2018 continued to report a "fair" prognosis. (PageID.474, 476–81, 483–84, 486–88, 490–93.)

The ALJ also noted that Plaintiff's treatment was conservative and that he had had no psychiatric hospitalizations. These were also appropriate considerations in determining how much weight to afford the opinions. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) (concluding that the ALJ properly discounted the treating physician's opinion based on the plaintiff's conservative treatment"); *Leppien v. Comm'r of Soc. Sec.*, 2016 WL 3661851, at *5 (W.D. Mich. July 11, 2016) ("The Sixth Circuit has found that conservative treatment may constitute a 'good reason' for discounting a treating physician's opinion."); *Ampy v. Comm'r of Soc. Sec.*, No. 2:14-cv-13547, at *11 (E.D. Mich. Jan. 14, 2016) (noting that "the ALJ may consider hospitalizations, or a lack thereof, in forming his or her disability determination") (citing *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 445 (6th Cir. 2011)). In addition, the ALJ also discounted the doctors' opinions because they were inconsistent with Plaintiff's limited mental health treatment. Plaintiff attended psychotherapy sessions for about ten months in 2016 and 2017 but then discontinued treatment and did not return for almost a year. Plaintiff argues that this was not a "good reason" to discount the doctors' opinions because the lapse in treatment was due to Plaintiff's lack of funds. While it is true that in his April 14,

14

2017 session Plaintiff mentioned his back pain and lack of funds as reasons why he could not attend his sessions (PageID.486), Dr. Pernell gave Plaintiff four phone numbers for obtaining psychotropic medications and noted that "[n]o psychotherapy is necessary." (*Id.*) Moreover, the treatment notes show that Plaintiff did not stay for his December 6, 2016 appointment, did not attend therapy in January 2017, was a no-show for his March 17, 2017 appointment and the therapist in the February 17, 2017 session observed that Plaintiff "show[ed] little interest in therapy." (PageID.482, 484, 485.) Finally, there is no indication that Plaintiff sought financial assistance to obtain mental health treatment.

In light of the foregoing, the Court finds that the ALJ properly evaluated Drs. De Vries's and Pernell's opinions and gave good reasons, supported by substantial evidence, for assigning them only limited weight.

## IV. Plaintiff's Obesity

Finally, Plaintiff argues that the ALJ erred in failing to address the effects of his obesity on his impairments in accordance with SSR 02-1p. Plaintiff notes that while his medical records showed that he had a Body Mass Index (BMI) of at least 32.9, and he testified at the hearing that he had gained about 20 pounds, the ALJ ignored this evidence in determining Plaintiff's functional limitations.

Obesity is no longer a listed impairment, but SSR 02-1p directs ALJs to consider its effects when evaluating a claimant's disability. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 442 (6th Cir. 2010). The Sixth Circuit has observed that SSR 02-1p does not mandate "any particular procedural mode of analysis for obese disability claimants." *Id.* at 443 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006)). It has also recognized that an ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).

However, the impact of obesity must be examined in the context of the claimant's medical record because it "may or may not increase the severity or functional limitations of the other impairments." SSR 02-1p, 2002 WL 34686281, at *6.

Although the ALJ did not mention Plaintiff's obesity, any error was harmless. Plaintiff did not list obesity as a medical condition in his application (PageID.229), and he did not testify at the hearing that his obesity limited his ability to work (PageID.65–84). In *Cranfield v. Commissioner of Social Security*, 79 F. App'x 852 (6th Cir. 2003), the court rejected the plaintiff's assertion that the ALJ was bound to consider her obesity as a possible impairment because her doctors' reports mentioned her obesity. The court observed, "[t]he problem with this argument is the ALJ never received evidence suggesting Ms. Cranfield or her doctors regarded her weight as an impairment. In fact, Ms. Cranfield provided no evidence that obesity affected her ability to work." *Id.* at 857–58; *see also Smith v. Astrue*, No. 3:10CV1829, 2012 WL 1232272, at *4–5 (N.D. Ohio Apr. 12, 2012) (finding no error in the ALJ's failure to consider the plaintiff's obesity where the plaintiff presented no evidence to the ALJ indicting that her obesity impacted her ability to work, did not testify about her obesity and did not list obesity as an impairment in her disability report). In addition, Plaintiff cites no medical evidence in the record supporting greater functional limitations based on obesity. "[W]hen 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary." *Kocher v. Comm'r of Soc. Sec.*, No. 2:14-cv-2263, 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005)).

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. An order consistent with this opinion will enter.

Dated: September 28, 2020	/s/ Sally J. Berens
	SALLY J. BERENS
	U.S. Magistrate Judge